IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**KENNETH EARL GEISSLER,**

**Plaintiff,**

vs.　　　　　　　　　　　　　　　　　　　CASE NO. 2:16-cv-06590

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

**Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 7), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 8) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 9).

Background

On October 4, 2012, Kenneth Earl Geissler, Claimant, applied for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning March 1, 2008. The claim was denied initially on May 10, 2013, and upon reconsideration on September 10, 2013. On November 7, 2013, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ). On December 4, 2014, an ALJ presided over a video hearing in Charleston, West Virginia. Claimant appeared in Parkersburg, West Virginia. On December 11, 2014, the ALJ issued a decision denying Claimant's application for disability. On February 9, 2015, Claimant requested review by the Appeals Council (AC). On May 27, 2016, the AC denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner.

Claimant filed the instant action seeking judicial review and requesting the remand and/or reversal of the ALJ's decision

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date of March 1, 2008, and meets the insured status requirements of the Social Security Act through December 31, 2014 (Tr. at 15). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of history of prostate cancer, degenerative disc disease of the lumbar and cervical spine, right knee pain with tear of anterior cruciate ligament status post arthroscopy and right shoulder tendonitis with pain. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 16). The ALJ then found that Claimant has a residual functional capacity to perform work at the medium exertional level (Tr. at 22). However, Claimant was limited to: lift and carry up to 50 pounds occasionally and 25 pounds frequently; stand and walk 6 hours and sit 6 hours each in an 8-hour workday. Claimant may occasionally climb ladders, ropes or scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch or crawl. Claimant may constantly reach overhead with the right dominant upper extremity. He must avoid occasional extreme heat and frequent exposure to extreme cold, wetness, vibration, hazards, machinery and heights (Tr. at 16). The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 21). The ALJ concluded that considering Claimant's age, education, work

experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform such as stock clerk, assembler and janitorial (Tr. at 22). Consequently, Claimant was found not under a disability at any time from March 1, 2008, the alleged onset date, through December 11, 2014, the date of the ALJ's decision. (*Id.*)

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on December 1, 1956. Claimant has a high school education. On the date of the ALJ hearing, Claimant stood 6 ft. tall and weighed 185 lbs. (Tr. at 34). He lives with

4

his wife (Tr. at 52). Claimant has 7 children and 12 grandchildren (Tr. at 53).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to provide an adequate explanation for how he formed the residual functional capacity (RFC) findings, "thereby frustrating meaningful review by this Court" (ECF No. 7). Claimant asserts that the ALJ left "the Court unable to determine whether the ALJ's RFC is supported by substantial evidence." Defendant asserts that substantial evidence supports the ALJ's finding that Claimant could perform some postural movements frequently, rather than occasionally as assessed by the State agency physicians, and that Claimant would still be found not disabled even if he was limited to only occasional postural movements (ECF No. 8).

## Medical Record

The Court only discusses the medical record findings relevant to the issue raised by Claimant and rebutted by Defendant (ECF Nos. 7, 8 and 9).

On January 20, 2010, Claimant reported to Pinti Family Chiropractic with chief complaint of neck pain (Tr. at 303). Office Notes reflect that Claimant experienced dull and achy pain and headaches.

On December 3, 2012, Claimant was seen by Dennis E. Newland, M.D., with Mid-Ohio Valley Medical Group for pain in his back and neck (Tr. at 382). Claimant self-reported that he experiences numbness. Dr. Newland stated that "he does have some pain in the upper back musculature." (*Id.*) On December 14, 2012, the Department of Radiology at Camden Clark Medical Center in Parkersburg, West Virginia, performed an MRI examination of Claimant's cervical spine (Tr. at 497-498). Claimant reported left arm pain and numbness (Tr. at 497). The "Final Report" of the Department of Radiology found, among other things, "There is moderate

to severe right neuroforaminal narrowing and mild left neuroforaminal narrowing. No significant central canal narrowing, canal of [a] approximately 2mm" (Tr. at 498). The Final Report stated that "There is no significant central canal or neuroforaminal stenosis." (*Id.*)

On April 29, 2013, Stephen Nutter, M.D., completed an Internal Medicine Examination of Claimant due to pain in his back, neck and knees. Dr. Nutter's impression reflected chronic cervical and dorsolumbar strain and degenerative arthritis (Tr. at 433). Dr. Nutter noted that "There appears to be no evidence of weakness or nerve root compression. There is no evidence of upper motor neuron lesion."

On April 29, 2013, Dr. Nutter completed a second Internal Medicine Examination of Claimant for the same chief complaints of experiencing pain in his back, neck, knees, ankles, right shoulder and right elbow (Tr. at 430). Dr. Nutter reported that no tenderness of the spine was found upon examination (Tr. at 432). Dr. Nutter reported that Claimant experiences pain in both knees when squatting. (*Id.*) Dr. Nutter noted that "There appears to be no evidence of weakness or nerve root compression. There is no evidence of upper motor neuron lesion" (Tr. at 433). Dr. Nutter's summary reflected that Claimant had some pain and tenderness in the right shoulder with pain in the right elbow and right knee. He had pain in both knees without squatting and could not squat because of knee and back pain (Tr. at 433-434).

On August 8, 2013, Claimant was seen by George E. Herriott, M.D., due to right knee pain (Tr. at 471). Claimant reported that his knee "gives way." Dr. Herriott's notes state that Claimant "[h]as a lot of problem[s] squatting and can't kneel." (*Id.*) Claimant self-reported that he wears a functional brace on his knee when he plays softball.

On April 30, 2014, Claimant had knee surgery. On May 8, 2014, Brook E. Morgan, PA-C, saw Claimant for a post-op examination following right knee arthroscopy with partial lateral meniscectomy and chondroplasty medial, lateral and patellofemoral compartments (Tr. at 460). Claimant reported that his knee felt better.

On June 4, 2014, Claimant reported to the South Parkersburg Clinic with complaints of neck pain and stiffness (Tr. at 465). On June 30, 2014, an MRI was taken of Claimant's right shoulder at Camden Clark Medical Center (Tr. at 495). The MRI demonstrated "possible mild partial-thickness insertional articular surface tear of the infraspinatus tendon" and that there was a presence of "[m]arrow edema seen in the greater tuberosity, nonspecific." (*Id.*)

On July 17, 2014, Dr. Herriott examined Claimant and gave him a corticosteroid injection in his right shoulder (Tr. at 475). Claimant reported experiencing pain in his shoulder, the back of his upper arm and left ankle. Dr. Herriott reports that Claimant still experiences pain, stiffness and swelling in his right knee post arthroscopy. Claimant reported that it was still hard to do deep knee bends. (*Id.*) However, Claimant did report that he did not experience pain with walking or running. (*Id.*) Claimant was assessed with rotator cuff tendonitis with partial tear (Tr. at 476). Dr. Herriott assessed Claimant's pain as much better than pre-operation. (*Id.*) Claimant was also assessed with left achilles tendinitis.

<u>Claimant's Testimony</u>

Claimant testified to receiving pain injections in his neck and knees (Tr. at 43). Claimant testified that he experiences pain in both knees, but his right knee hurts more. Claimant testified that his most recent pain injection as of the date of the hearing was two weeks before the hearing. Claimant stated that he has had knee surgery and physical therapy before but his knee pain had

7

not decreased (Tr. at 45). Claimant reported that he is treated by a chiropractor due to his back pain (Tr. at 46). Further, Claimant testified that he cannot raise his right shoulder without experiencing pain (Tr. at 47). Claimant asserted at the hearing that his back, knees and neck always hurt when he is walking or standing (Tr. at 56).

Claimant testified to experiencing frequent headaches. He asserted that he has a headache everyday (Tr. at 49). Claimant testified that he had his prostate removed due to cancer (Tr. at 55). Claimant testified that he travels to Florida in the winter months because the warmer weather is better on his joints (Tr. at 53).

Claimant testified to playing on a softball team in a retirement community. He stated that he can't throw overhanded so he pitches underhanded. (*Id.*) Claimant reported that he plays for approximately five minutes then sits in the dugout for approximately five minutes. He stated that he does not play every game (Tr. at 55).

## Discussion

A residual functional capacity (RFC) assessment represents the most that an individual can do despite his or her limitations or restrictions. *See* Social Security Ruling 96-8p, 1996 WL 374184, *1 (July 2, 1996). Pursuant to SSR 96-8p, the RFC assessment must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. The Ruling requires that the ALJ conduct a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* This function-by-function analysis enables the ALJ to determine whether a claimant is capable of performing past relevant work, the appropriate

exertional level for the claimant, and whether the claimant is "capable of doing the full range of work contemplated by the exertional level." *Id.* Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. § 404.1545(a) (2016). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." *Id.* "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

<u>Five-Step Sequential Evaluation</u>

In a decision by the United States Court of Appeals for the Fourth Circuit, *Monroe v. Colvin*[1], the court provided the following discussion regarding the ALJ's RFC assessment within the five-step sequential evaluation in making a disability determination:

> In determining a claimant's RFC, the ALJ must consider "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including those not labeled as severe at step two. *Mascio*, 780 F. 3d at 635 (quoting C.F. R. § 416.945(a)(2)). He also must "consider all [the claimant's] symptoms, including pain, and the extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); see 20 C.F.R. § 416.929(a). "When the medical signs or laboratory findings show that [the claimant] has a medically determinable impairment that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [his] symptoms limit [his] capacity for work." 20 C.F.R. § 404.1529(c)(1), 416.929(c)(1).

---

[1] *Monroe v. Colvin*, No. 15-1098 (4th Cir. June 16, 2016).

> Once the ALJ has determined the claimant's RFC, the ALJ then proceeds to step four, where the burden rests with the claimant to show that he is not able to perform his past work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Mascio*, 780 F.3d at 635. If he successfully makes that showing, the process proceeds to step five. *See Mascio*, 780 F.3d at 635.
>
> "At step five, the burden shifts to the Commissioner to prove by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education and work experience." *Id.* (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* If the Commissioner satisfies that burden, then the claimant is found to be not disabled and his benefits application is denied. *See id.*

<u>Function-By-Function Analysis</u>

Social Security Ruling 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." It is only after the function-by-function analysis has been completed that a RFC may "be expressed in terms of the exertional levels of work." *Id.* The Court in *Mascio* noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. *Mascio v. Colvin,* 780 F.3d 632 (4th Cir. 2015). The Fourth Circuit further noted that a *per se* rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.*

In *Monroe*, the claimant alleged episodes of loss of consciousness and fatigue. Monroe testified that he would lose consciousness about two or three times per day and would need to

take several breaks during the day because of fatigue. The ALJ found that Monroe had the severe impairments of sleep apnea and narcolepsy and concluded that Monroe's impairments could reasonably be expected to cause his claimed symptom. However, the Fourth Circuit found that the ALJ "never made specific findings about whether Monroe's apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." See *Monroe*, citing SSR 96-8p, 61 Fed. Reg. at 34, 478 ("in all cases in which symptoms, such as pain, are alleged, the RFC assessment must … [i]nclude a resolution of any inconsistencies in the evidence as a whole" and "[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work"). The ALJ concluded that Monroe was capable of light work, with exceptions the ALJ identified, and that the claimant's alleged symptoms were not credible to the extent they are inconsistent with the RFC the ALJ identified.

The Fourth Circuit stated in the *Monroe* opinion:

> We have not adopted a rule of reversal for errors in expressing the RFC before analyzing the claimant's limitation function by function. *See Mascio*, 780 F.3d at 636. However, we have held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (alterations and internal quotation marks omitted). We conclude that this is just such a case.
> 
> Because the ALJ never determined the extent to which Monroe actually experienced episodes of loss of consciousness and extreme fatigue, we cannot determine whether the hypothetical questions posed to the VE, [vocational expert], included all of Monroe's functional limitations, as they needed to do in order to be useful. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." (alteration and

internal quotation marks omitted)). On remand, the ALJ will need to consider Monroe's narcolepsy and apnea, and all of his other physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect his ability to work. Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning Monroe's ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy. *See Mascio*, 780 F.3d at 636.

## Claimant's RFC

In the present case, the ALJ's RFC assessment of Claimant stated that Claimant may occasionally climb ladders, ropes or scaffolds and frequently climb ramps and stairs, balance, stoop, kneel, crouch or crawl (Tr. at 16). The ALJ did not perform an explicit function-by-function analysis of Claimant's limitations. "Rather, as it seems to be a recurrent practice, the ALJ merely stated the ultimate RFC finding in a heading and proceeded to discuss the medical record without ever tying the discussion back to the limitations ascribed to [Claimant] in the RFC finding."[2] The Court in this district has held that "This practice does not comply with SSR 96-8p and should be discouraged." Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013)). The court turns to the ALJ's discussion of the medical evidence to determine whether that evidence, "as discussed by the ALJ, provides a sufficient basis to meaningfully review the ALJ's RFC conclusions, and, ultimately, deduce whether his RFC determination is supported by substantial evidence in the

---

[2] See Memorandum Opinion and Order in *Ford v. Colvin*, Civil Action No. 2:15-cv-05088 (S.D. W.Va. Sept. 21, 2016).

record." *Ashcraft v. Colvin*, No. 313-cv-00417-RLV-DCK, 2015 WL 9304561, at *7 (W.D.N.C. Dec. 21, 2015).

<u>Weight Afforded Medical Opinions</u>

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program

physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[3] of §§ 404.1527 and 416.927.

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

<u>Medical Opinions</u>

Office notes from Pintini Family Chiropractic dated January 20, 2010, and February 2, 2010, report that Claimant complained of neck pain and low back pain. Claimant underwent chiropractic manipulations during his visits.

An X-ray report dated October 17, 2012, from Lake Square Chiropractic showed:

---

[3] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

> [C]alcification of Atlanto-Occipital ligament; flattening with slight reversal of the normal cervical curve; retrolisthesis of C5 and C4, and C6 and C7; spur formation anterior C4-C5 and C6-C7; damage to posterior aspect of spinousprocess of C6 and C7 at nuchal degenerative joint disease; moderate advanced degenerative joint disease noted at C4, C5 and C6; counter rotation cervical subluxation C4, C5 and C6; damage to superior endplate of C5; head rotation and tilt to the right; and mild to moderate degenerative joint disease note throuout the thoracic spine (Tr. at 355).

An office note dated December 5, 2012, from Brooke Morgan, PA-C, reported that Claimant complained of right knee pain with intermittent instability. On December 12, 2012, an MRI of Claimant's right knee showed complete tear of the anterior crucial ligament, numerous chondral defects, the largest seen in the lateral fermoral condyle and the anterior femoral trochlea, small joint effusion and slight irregular tear of the body and the posterior horn of the lateral meniscus (Tr. at 368). Ms. Morgan reported that Claimant "would like to start playing tennis but is not able to because of his knee" (Tr. at 365).

On January 7, 2013, Dennis Newland, M.D., Claimant's treating physician, noted:

> [Claimant] is a longtime patient of mine who has had a persistent complaint of low back pain. He has had trouble for thirty years and it is getting worse. He also has neck pain, and he has radiculopathy symptoms in the left arm and hand.
>
> He also has right knee pain that is also worsening. He has an appointment with orthopedics regarding this problem.
>
> At the present time, [Claimant] is unable to perform his job duties at UPS secondary to his symptoms (Tr. at 380).

The ALJ gave little weight to Dr. Newland's opinion. The ALJ stated that Claimant reported daily activities and played golf and softball (Tr. at 20).

On April 24, 2013, consultative examiner Stephen Nutter M.D., "stated the claimant could not squat because of knee and back pain" (Tr. at 19). A report from Image Pro Solutions, PLLC, to Dr. Nutter provided:

> There is a slight scoliotic curvature with convexity to the right. At T12-L1, there is mild anterior and lateral spurring. At L1, there is mild anterior wedge deformity of the vertebral body, chronic in appearance. Along the cranial endplate and the caudal endplate, there appear to be small Schmorl's nodes. At L1-L2, there is slight anterior spurring. At L2, there is mild anterior wedge deformity of the vertebral body, chronic in appearance. There appears to be a Schmorl's node along the cranial endplate. At L2-L3, there is mild disc narrowing with endplate sclerosis and mild anterior and moderate lateral spurring. At L3-L4, there is slight anterior spurring. At L4-L5, there is slight lateral spurring (Tr. at 436).

Dr. Nutter stated that Claimant experienced pain and tenderness of the right shoulder and knee. Dr. Nutter indicated that Claimant exhibited decreased range of motion of the cervical and lumbar spine with tenderness in the lumbar spine (Tr. at 433). ALJ did not state any weight given to Dr. Nutter's opinion.

On May 6, 2013, a State agency consulting physician, Amy Wirts, M.D., reviewed Claimant's record and opined that Claimant could perform work at medium exertion but "occasionally climb ramps and stairs, climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch or crawl." Medical consultant Rabah Boukhemis, M.D., reviewed the record and completed a physical assessment form on August 19, 2013, and agreed with Dr. Wirts' May 6, 2013, opinion. As to the opinions of Dr. Wirts and Dr. Boukhemis, the ALJ gave "great weight to these opinions but [found] the evidence received at the hearing level supports the claimant could perform frequent postural activity" (Tr. at 21).

An initial examination report from treating physician George Herriott, M.D., dated August 8, 2013, reported that Claimant complained of right knee pain. Dr. Herriott noted Claimant reported problems with squatting and kneeling. Dr. Herriott reported that Claimant experienced tenderness of the right knee upon palpation. Dr. Herriott reported that Claimant's range of motion of his right knee was normal with no weakness. Claimant had knee surgery on April 30, 2014. Dr. Herriott examined Claimant again on June 19, 2014, and noted that Claimant complained of achiness and stiffness with swelling of the right knee but overall improvement since Claimant underwent knee surgery. On July 17, 2014, Dr. Herriott's notes reflect that Claimant reported he was not experiencing right knee pain with walking or running. The ALJ did not state what weight, if any, was given to Dr. Herriott's opinion.

The ALJ gave little weight to treating physician Dr. Newland's opinion and great weight to the opinions of consulting physicians Dr. Wirts and Dr. Boukhemis. The ALJ did not state what weight was given, if any, to the opinion of Claimant's treating physician Dr. Herriott or to the opinion of medical consultant Dr. Nutter. Because the ALJ did not give the opinions of Claimant's treating physicians great weight, the ALJ was required to weigh all of the following factors in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R.§§ 416.927(c) and 404.1527.

## Conclusion

The undersigned respectfully recommends that the District Judge find that the ALJ did not explain the supportability and consistency of the medical opinions on the record. The ALJ did not weigh the opinion of consulting physician Dr. Nutter. Dr. Nutter reviewed X-rays of Claimant's

17

lumbar spine which the ALJ stated "showed degenerative changes" (Tr. at 19). Dr. Nutter's opinion directly addresses the issue before this Court, whether Claimant can occasionally or frequently perform postural activities. Dr. Nutter specifically stated that Claimant could not squat because of knee and back pain. The undersigned suggests the District Judge remand this matter and direct the ALJ to weigh the opinion of Dr. Nutter and to explain the reasoning for the weight given.

Furthermore, the medical opinions the ALJ gave great weight, Dr. Wirts and Dr. Boukhemis, agreed that Claimant could "**occasionally** climb ramps and stairs, climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch or crawl."[4] However, instead of adopting their opinions and determine Claimant could occasionally perform the postural activities, the ALJ held that Claimant could "**frequently** climb ramps and stairs, balance, stoop, kneel, crouch or crawl"[5] (Tr. at 16). The ALJ's reasoning for finding the frequency Claimant can perform postural activities was because Claimant reported walking, playing golf and playing softball (Tr. at 21).

If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. Accordingly, the undersigned respectfully recommends the District Judge find that the ALJ failed to provide a thorough discussion and analysis weighing the medical opinions and Claimant's comments, including a resolution of the inconsistencies in the record and a function-by-function analysis, regarding the ALJ's RFC finding on postural activities.[6] This Court further proposes that pursuant to the holding in *Monroe*, the

---

[4] Emphasis added.
[5] Emphasis added.
[6] A court found "Where claimant admitted that she could lift a gallon of water, which weighs 8.34 pounds, this did not justify [the] ALJ's conclusion that she could perform light work, which requires lifting 10 pounds frequently. Also, an ability to make toast and coffee does not justify [a] conclusion that claimant can cook." See *Collins v. Apfel*, 31 F. Supp. 2d 1057, 59 Soc. Sec. Rep. Serv. 509 (N.D. Ill. 1998).

District Judge find that the ALJ failed to provide a well-reasoned narrative for his RFC assessment of nonexertional limitations. Therefore, the undersigned respectfully recommends that the District Judge find that the ALJ's opinion lacks the analysis and narrative discussion that would allow for meaningful review. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Memorandum in Support of Judgment on the Pleadings (ECF No. 7) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 8), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 31, 2017

Dwane L. Tinsley
United States Magistrate Judge